IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CODY FUGETT, | |
| Plaintiff, | 8:21-CV-125 |
| vs. | |
| DOUGLAS COUNTY, NEBRASKA, and WELLPATH, LLC, | MEMORANDUM AND ORDER |
| Defendants. | |

## I. INTRODUCTION

Cody Fugett sued Douglas County, Nebraska ("Douglas County"), and Wellpath, LLC ("Wellpath") for negligence, medical malpractice and medical negligence, and violating the Eighth Amendment's prohibition on cruel and unusual punishment pursuant to 42 U.S.C. § 1983. Before the Court is Douglas County's Motion for Partial Summary Judgment on Count I of Fugett's Complaint, Filing 31, and Fugett's Motion for Leave to File Sur Reply Brief and Additional Exhibit in Opposition to Defendant's Motion for Summary Judgment. Filing 40. For the reasons stated herein, the Court grants Douglas County's motion, denies Fugett leave to file a surreply, and grants Fugett leave to file an additional exhibit in opposition to summary judgment.

1

## II.     BACKGROUND

Fugett filed this action against Douglas County and Wellpath for their alleged wrongful denial of necessary medical treatment while he was incarcerated at Douglas County Correctional Center ("DCCC") in 2019. Filing 1-1 at 4-18.

On September 11, 2018, the Douglas County Board of Commissioners voted to accept a bid to provide medical care to inmates housed at DCCC from Correct Care Solutions, LLC, now doing business as Wellpath. Filing 32-11 at 1-2; Filing 32-2 at 113. Douglas County and Wellpath entered into a contract on February 12, 2019, with services commencing on March 1, 2019. Filing 32-2 at 1. The contract requires Wellpath to provide several healthcare services by qualified healthcare personnel, to hold regular medical staff meetings, and to meet monthly with Douglas County Department of Corrections administration members to keep them apprised of any healthcare-related issues within the inmate population. Filing 32-2 at 15, 34, 44-46. Additionally, the contract states that Wellpath is an independent contractor and that its employees are not employees of Douglas County. Filing 32-2 at 25-26. The contract also requires Wellpath to employ a full-time, on-site administrator to ensure "successful delivery of health care pursuant to the contract." Filing 32-2 at 34. A Douglas County "Contract Administrator" oversees the contract and evaluates Wellpath's performance. Filing 32-2 at 13. At all times relevant to this suit, Captain Mary E. Earley filled this position. Filing 32-1 at 1-2.

Fugett's incarceration began on April 4, 2019 and ended on December 4, 2019. Filing 38-17 at 1. According to Fugett's Complaint, he unknowingly contracted syphilis, a sexually transmitted disease, shortly before his incarceration began. Filing 1-1 at 7. During his April 4, 2019, intake screening, Fugett indicated that he had not "been exposed to or been diagnosed with . . . [a] venereal or sexually transmitted disease." Filing 32-8 at 1. However, within about three

weeks after intake, Fugett claims he began experiencing open sores on his genitals, painful urination, inflammation, and other unpleasant symptoms. Filing 1-1 at 7. According to Fugett, he notified DCCC staff about his symptoms. Filing 1-1 at 7. DCCC staff told Fugett to file an inmate request form, commonly referred to as a "Kite," and Fugett did so. Filing 1-1 at 7; Filing 38-17 at 1.

After Fugett filed his Kite, a medical professional examined him at DCCC's infirmary. Filing 38-17 at 1-2. According to Fugett, the medical professional refused to test for STDs and explained that a rule prohibited STD tests without exception until an inmate had been incarcerated for at least six months. Filing 38-17 at 2. Instead, Fugett claims, the medical professional provided three days of antibiotics that did not improve his condition. Filing 38-17 at 2. After his appointment, Fugett did not file a grievance form regarding his medical care because, he claims, it would not have resulted in timely medical care and he was afraid it would anger medical care staff. Filing 32-1 at 9-10; Filing 38-7 at 2. Later, Fugett received testing and learned he had contracted Syphilis and HIV. Filing 1-1 at 8.

On March 2, 2021, Fugett sued Douglas County and Wellpath in Nebraska state court. Filing 1-1 at 4. The Complaint alleges that Douglas County and Wellpath behaved negligently in providing medical care to Fugett, committed medical malpractice and medical negligence, and violated the Eighth Amendment's prohibition on cruel and unusual punishment. Filing 1-1 at 10-18. Douglas County and Wellpath removed the action to this Court on March 23, 2021. Filing 1. On June 14, 2021, Douglas County moved for partial summary judgment, claiming that sovereign immunity barred Fugett's negligence claim in Count I of his Complaint. Filing 31. Douglas County does not seek summary-judgment on the remaining causes of action in Fugett's Complaint. Fugett filed his Motion for Leave to File Sur Reply Brief on July 26, 2021, requesting that the Court

3

permit him to respond to arguments made in Douglas County's Reply Brief, Filing 39, and seeking to file an attorney affidavit relating to the exhibits he previously filed with his Brief in Opposition to Partial Summary Judgment. Filing 40 at 3-4.

### III.  ANALYSIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to

4

support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Leave to File Surreply

Before proceeding to the merits of Douglas County's Motion for Partial Summary Judgment, the Court first addresses Fugett's Motion for Leave to File Sur Reply and Additional Exhibit in Opposition to Defendant's Motion for Summary Judgment. Fugett asks that the Court permit him to respond to arguments raised in Douglas County's Reply Brief and to file an attorney affidavit with the exhibits supporting his Brief in Opposition to Douglas County's Motion for Partial Summary Judgment. Filing 40 at 3-4. Douglas County opposes Fugett's motion. Filing 41.

Although Fugett neglected to timely file an attorney affidavit to identify and authenticate his evidence in opposition to summary judgment as required by Nebraska Civil Rule 7.1(b)(2)(C), the Court will nevertheless admit the late-filed affidavit. Given that Fugett filed his motion for leave to file the affidavit only eleven days after filing his exhibits, there is no showing that he acted

5

without due diligence in addressing his error. Additionally, the prejudice to Douglas County is minimal since Fugett timely filed all his exhibits except the attorney affidavit. *Cf. Buffets, Inc. v. Leischow*, 732 F.3d 889, 895 (8th Cir. 2013) (upholding district court's rejection of evidence where party did not file evidence until after opposing party had filed its reply because the "opposing party [had] no opportunity to respond in the normal briefing process"). Additionally, Douglas County admits it does not question that the exhibits filed by Fugett are true and accurate copies. Filing 41 at 4. Thus, Fugett's attorney affidavit is admitted.[1]

Fugett's request for leave to file a surreply is a different matter. Fugett wishes to file a surreply to argue that Douglas County's employees had a duty to provide reasonably adequate protection to Fugett, including providing timely and competent medical care. Filing 40 at 4-5. But Fugett has already thoroughly analyzed this issue in his brief in opposition. *See* Filing 37 at 12-16. In his brief, Fugett cites several statutes and cases that he claims require Douglas County employees to ensure he received adequate medical care. Filing 37 at 9-16. The Court has been well informed on the issues by both parties and, therefore, sees no need for a surreply. The Court therefore denies Fugett leave to file a surreply.

### C. Douglas County's Sovereign Immunity

In its Motion for Partial Summary Judgment, Douglas County asserts that Fugett's claim in Count I of his Complaint is a state-law negligence claim for which Douglas County enjoys

---

[1] Although the Court admits Fugett's attorney affidavit, the Court notes that Fugett's Brief in Opposition violates the Court's local rules in another significant way. Nebraska Civil Rule 56.1(b)(1) provides that, when opposing a motion for summary judgment, the nonmovant "must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies." NECivR 56.1(b)(1). Fugett's Brief in Opposition fails to follow this rule by not including pinpoint references to the hundreds of pages of depositions he filed with his brief and not providing citations to several paragraphs in his statement of facts. *See* Filing 37 at 2-7. Failing to properly controvert material facts may lead to the movant's statement of facts being admitted. *See* NECivR 56.1(b)(1). However, as these voluminous deposition materials primarily relate to other aspects of this lawsuit and not the narrow issue pending before the Court at this time, the Court need not employ the remedy provided for in Rule 56.1(b)(1).

sovereign immunity. Filing 33 at 1. According to Douglas County, "Count I describes conduct that is a discretionary function for which Nebraska's Political Subdivisions Tort Claims Act ("PSTCA") expressly preserves Douglas County's immunity." Filing 33 at 10. In response, Fugett argues, "There is a clear common law duty, statutory duty, and constitutional duty to provide adequate medical treatment to inmates, to properly supervise Wellpath . . . and to provide an adequate medical grievance process." Filing 37 at 1. Fugett claims that such duties "are ministerial and not discretionary" and therefore do not confer sovereign immunity upon Douglas County. Filing 37 at 1. The Court concludes Fugett's allegations in Count I against Douglas County fall within the discretionary-function exception to the PSTCA's waiver of sovereign immunity and Douglas Count is therefore entitled to summary judgment on this cause of action.

   1. *The Discretionary-Function Exception to Waiver of Sovereign Immunity*

"Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter." *Burke v. Bd. of Trs. of Neb. State Colleges*, 924 N.W.2d 304, 309 (Neb. 2019). Absent a waiver of sovereign immunity, "a trial court lacks subject matter jurisdiction over an action against the State." *Id.* at 311. The Nebraska Supreme Court instructs that all Nebraska statutes purporting to waive sovereign immunity "are strictly construed in favor of the sovereign and against the waiver." *Id.* "A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction." *Id.*

Fugett brings his tort claim for negligence under the Nebraska PSTCA, "the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Geddes v. York Cnty.*, 729 N.W.2d 661, 665 (Neb. 2007). The PSTCA provides a limited waiver of sovereign immunity for certain suits against a political subdivision or its employees. *See id.*

However, the act prohibits suits for "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." Neb. Rev. Stat. § 13-910(2). The Nebraska Supreme Court affords a broad reading to exemptions from waivers of sovereign immunity. *See Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 751 (Neb. 2021).

"[T]he performance or nonperformance of a discretionary function cannot be the basis of liability under the [PSTCA]." *Jasa By & Through Jasa v. Douglas Cnty.*, 510 N.W.2d 281, 283 (Neb. 1994) (citing *Lemke v. Metro. Utils. Dist.*, 502 N.W.2d 80 (Neb. 1993)). "The purpose of the discretionary function exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Mercer v. N. Cent. Serv., Inc.*, 953 N.W.2d 551, 559 (Neb. 2021) (quoting *Kimminau v. City of Hastings*, 864 N.W.2d 399, 409 (Neb. 2015)). "The discretionary function exception extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions." *Id.* Therefore, it does not apply to "the exercise of discretionary acts at an operational level." *Id.* (quoting *Kimminau*, 864 N.W.2d at 409). For example, the discretionary-function exception includes "the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards." *Norman v. Ogallala Pub. Sch. Dist.*, 609 N.W.2d 338, 345–46 (Neb. 2000) (citing *Talbot v. Douglas Cnty.*, 544 N.W.2d 839, 843 (Neb. 1996)). In contrast, a ministerial act is "one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Larson by Larson v.*

8

*Miller*, 76 F.3d 1446, 1457 (8th Cir. 1996) (quoting *Jasa*, 510 N.W.2d at 290 (internal quotations and citation omitted)).

Applying the discretionary-function exception under the PSTCA involves a two-step analysis. *Lambert v. Lincoln Pub. Sch.*, 945 N.W.2d 84, 90 (Neb. 2020). "First, the court must consider whether the action is a matter of choice for the acting political subdivision or employee." *Id.* "Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* Summarized, in Count I of his Complaint, Fugett claims Douglas County was negligent with respect to three categories of action: (1) entering into a contractual relationship with Wellpath for the provision of medical services at DCCC, (2) failing to implement and maintain an adequate grievance system at DCCC, and (3) various matters related to Douglas County staff and their actions. The Court takes up each category separately and concludes that, as to all of Fugett's allegations in Count I of his Complaint, the discretionary-function exception applies. Therefore, Douglas County enjoys sovereign immunity as to Count I of Fugett's complaint and its partial summary-judgment motion is granted.

    2. *Douglas County's Contractual Relationship with Wellpath*

Fugett makes several allegations targeting Douglas County's contractual relationship with Wellpath. Fugett's claims include:

> Drafting and entering into a contract which created financial incentive for CCS/WELLPATH to wrongfully deny care to inmates, then failing to supervise and enforce Douglas County's contract with CCS/WELLPATH and failing to require CCS/WELLPATH to provide proper care to individuals incarcerated at DCC such as [Fugett],
>
> Failing to properly supervise CCS/WELLPATH, and/or provide proper oversight for CCS/WELLPATH, in its provision of medical care, [and]

> Failing to provide for proper independent review of any denial of treatment by CCS/WELLPATH.

Filing 1-1 at 10-11. Because Douglas County has broad discretion in contracting for services at DCCC and supervising Wellpath's provision of medical care, the discretionary-function exception applies.

Nebraska law requires a county board to serve as the county board of corrections in counties that have over 150,000 inhabitants, such as Douglas County. Neb. Rev. Stat. § 23-2802. The members of the board meet every sixty days and hear arguments and make recommendations for the "maintenance, supervision, control, and direction of the county jail and correctional facilities." Id. § 23-2803. Importantly, to provide essential goods or services for operating a correctional facility, the board may contract with "any individual, firm, partnership, limited liability company, or corporation." Id. § 23-2809.

Examining the above statutes reveals that Nebraska law places few, if any, limits on Douglas County's contract with Wellpath. Section 23-2809 gives Douglas County broad discretion in how it contractually arranges to provide services to DCCC. Contracting with Wellpath, then, was a policy judgment. See Layton v. United States, 984 F.2d 1496, 1502 (8th Cir. 1993) (holding, in the context of the Federal Tort Claim Act,[2] "[t]he selection of contractors is clearly a discretionary function within the scope of the discretionary function exception"). Thus, the decision to contract with Wellpath was "a matter of choice." Lambert, 945 N.W.2d at 90. As a policy judgment regarding social and political matters made by officials at the highest point in

---

[2] The discretionary-function exception of the Federal Tort Claim Act is "the pattern and substantial counterpart of Nebraska's State Tort Claims Act," Sec. Inv. Co. v. State, 437 N.W.2d 439, 445 (Neb. 1989), which expresses the discretionary-function exception "in nearly identical language" as the PSTCA. Amend v. Neb. Pub. Serv. Comm'n, 905 N.W.2d 551, 557 (Neb. 2018). Thus, the Court finds the Layton court's reasoning related to the Federal Tort Claim Act applicable to the PSTCA as well. See Williams v. City of Lincoln, 932 N.W.2d 490, 499-502 (Neb. Ct. App. 2019) (examining cases applying the Federal Tort Claim Act in claim brought under the PSTCA).

Douglas County's government, this judgment is the type the discretionary-function exception was meant to protect. *See Wizinsky v. State*, 957 N.W.2d 466, 473 (Neb. 2021) ("Broadly speaking, actors at the highest level of government are more likely as a general matter to be engaged in policy decisions to which the discretionary function exception applies.").

Moreover, Fugett's allegations of a failure to supervise and failure to provide for proper independent review are analogous to the failure-to-supervise claim made in the Nebraska Supreme Court case *Lambert v. Lincoln Public Schools*, 945 N.W.2d 84 (Neb. 2020). In *Lambert*, Lincoln Public Schools policies forbade allowing dogs to roam unleashed on school property during the school day, and vested administrators full power and authority to implement and enforce restrictions on the use of school property. *Lambert v. Lincoln Pub. Sch.*, 945 N.W.2d 84, 88 (Neb. 2020). One claim the plaintiff made was that a school operated by the defendant "fail[ed] to supervise the playground area after classroom instruction ended," thereby allowing a dog to bite the plaintiff and the plaintiff's daughter. *Id.* at 86-87, 91. In holding that the PSTCA's discretionary-function exception applied, the Court stated, "[The school's] decision not to supervise the playground area at all after school hours involved the exercise of judgment." *Id.* at 91. According to the court, "How to utilize staff and budget to supervise school grounds and regulate activities thereon are administrative decisions grounded in social, economic, and political policy, and they fall within the discretionary function exception." *Id.* Likewise, how Douglas County chooses to utilize its staff and budget to supervise Wellpath involves the exercise of judgment. This judgment, grounded in social, economic, and political policy, falls within the discretionary-function exception.

Attempting to resist this conclusion, Fugett points to two statutes he claims cabin Douglas County's discretion in this area. However, the statutes Fugett cites do not limit Douglas County's

judgment. Fugett first looks to Neb. Rev. Stat. § 47-110, which grants Douglas County the "power to appoint a physician to the jail when it deems it necessary" and to require the physician to make a written report. Nebraska Revised Statute § 47-110. Fugett claims this statute requires medical staff at DCCC to make reports and, therefore, demonstrates Douglas County has a duty to continually supervise medical care. This reading is at odds with the plain meaning of the statute, which only authorizes Douglas County to hire a physician "when it deems it necessary" and obliges that physician to make reports "whenever required by the county board, Jail Standards Board, or Grand Jury." Neb. Rev. Stat. § 47-110; *see also Edwards*, 953 N.W.2d at 750 ("Statutory language is to be given its plain and ordinary meaning . . . ."). Nothing in its terms imposes on Douglas County the affirmative duty to supervise Wellpath.

Fugett also cites Nebraska Revised Statute § 47-109, asserting that it "establishes a clear duty [that] Douglas County must visit the jail and supervise Wellpath." Filing 37 at 11. Section 47-109 allows grand juries to visit a county's jail to examine "its state and condition, and . . . the discipline and treatment of prisoners" and requires the county board to visit the jail "once during each of its sessions in January, April, July, and October." Neb. Rev. Stat § 47-109. Contrary to Fugett's assertion, this statute says nothing about Douglas County's duty to supervise Wellpath. The statute's provision on grand juries does not apply to Douglas County, and its requirement that Douglas County's county board visit DCCC at least four times a year does not state what, if anything, the county board is required to do during and after these visits.

The discretionary-function exception applies to Douglas County's contractual relationship with Wellpath. Its contractual relationship with Wellpath is an "administrative decision[] grounded in social, economic, and political policy" that "is of the kind that the discretionary function

12

exception was designed to shield." *Mercer*, 953 N.W.2d at 559-60. Therefore, sovereign immunity protects Douglas County from liability under these allegations.

    *3. Douglas County's Implementation of DCCC's Grievance System*

Fugett claims Douglas County "[f]ail[ed] to maintain an adequate grievance system and or [sic] provide information to inmates regarding any such grievance system for the correction of inmate medical grievances in a timely manner." Filing 1-1 at 11. Fugett's complaint asserts that the grievance system at DCCC is inadequate because of "the futility of other's efforts to obtain medical care through the grievance process." Filing 1-1 at 9. He also contends that DCCC and Wellpath engage in "delay tactics" when handling inmate grievances. Filing 1-1 at 9.

Nebraska statutes bind Douglas County to the rules made by the Jail Standards Board. *See* Neb. Rev. Stat. § 23-2802. The Jail Standards Board requires "a written policy" to address grievance procedures that is "available to all inmates." 81 Neb. Admin. Code § 13-004. All grievance systems must be "consistent" with certain "principles." *Id.* § 13-004. These principles require that (1) inmates be permitted to file a grievance, (2) grievances are transmitted "without interference or delay" to an individual with authority to receive and investigate them, (3) no inmate is subject to adverse treatment for filing a grievance, (4) grievances are "promptly investigated" and conclude with a summary report of findings and recommendations, and (5) inmates receive a "prompt response." *Id.* § 13-004.01–.05.

Douglas County contends that this regulation "merely provides 'principles' for jails to follow" and that the regulation allows Douglas County "to exercise discretion in determining how to fulfill its obligation." Filing 39 at 13. While the statute is not as permissive as Douglas County reads it—for example, the regulation requires that an employee make a report and that an inmate

receive a response—it is correct that the regulation leaves the particulars of investigating and resolving grievances to Douglas County's discretion.

Fugett's complaint attacks the DCCC's grievance procedure for both its outcomes and how quickly it reaches those outcomes. But he points to no statute that requires DCCC to resolve grievances in a particular way and within a certain time. At most, the Jail Standards Board regulations require that a response be "prompt." 81 Neb. Admin. Code § 13-004.05. Such a regulation does not "prescribe[] a course of action for an employee to follow." *Williams v. City of Lincoln*, 932 N.W.2d 490, 499 (Neb. Ct. App. 2019). Douglas County's choices regarding how grievance investigations are performed and what outcomes they reach are "judgmental decisions within a broad regulatory framework lacking specific standards." *Mercer*, 953 N.W.2d at 560. These decisions, as a matter of prison-administration policy, are "the kind that the discretionary function exception was designed to shield." *Id*; *see also Parker v. Lancaster Cnty. Sch. Dist. No. 001*, 591 N.W.2d 532, 540 (Neb. 1999) ("[T]he discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."). The discretionary-function exception, and thus sovereign immunity, apply to Fugett's allegation that Douglas County negligently implemented DCCC's grievance system.

4. *Douglas County's Staff-Related Decisions*

Fugett also contends that Douglas County was negligent with respect to its staff. Specifically, he argues Douglas County "[f]ail[ed] to train employees of DCCC to respond to instances of misconduct or poor medical care which they witnessed." Filing 1-1 at 11. He further claims that Douglas County was negligent in "[f]ailing to secure proper diagnoses and treatment for [Fugett's] Syphilis and/or HIV." Filing 1-1 at 11. Lastly, he claims Douglas County's agents acted negligently. According to Fugett, he "repeatedly informed agents of [DCCC], including

correctional officers, nurses, and a doctor, that he had been sexually active immediately prior to his incarceration and that he believed that his symptoms were caused by an STD." Filing 1-1 at 7. Fugett claims that when he requested STD testing, "agents of [DCCC] instructed [Fugett] to write a 'Kite.'" Filing 1-1 at 9. Ultimately, Fugett alleges that Douglas County's agents were negligent in "allowing [Fugett] to suffer from severe symptoms of Syphilis and HIV for over six months of his incarceration" despite knowing he was not being properly diagnosed or treated. Filing 1-1 at 11. Douglas County responds that the discretionary-function exception applies to its decisions regarding the use of DCCC staff to provide medical care. The Court agrees.

The Nebraska Supreme Court has held that "the utilization of staff is an administrative decision grounded in social, economic, and political policy, and it falls within the discretionary function exception." *Wizinsky*, 957 N.W.2d at 473-74 (Neb. 2021). Douglas County decided to contract with Wellpath for the provision of medical care at DCCC. It thus made a choice that Wellpath, not DCCC's corrections officers, would respond to inmates' medical needs. Fugett does not point to any law that limits the use of third-party medical providers in the prison context. Rather, Nebraska statutes are clear that Douglas County may contract "with any individual, firm, partnership, limited liability company, or corporation to provide goods or services essential to the operation and maintenance of the county jail." Neb. Rev. Stat. § 23-2809.

Douglas County, like all governmental entities, "establish[es] priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984). Here, Douglas County weighed practical considerations and decided to provide medical care to DCCC inmates through Wellpath rather than training its employees to respond to medical needs and secure treatments. Douglas

15

County likewise established a plan for inmates to alert Wellpath's medical staff about medical issues and to have Wellpath provide medical care. *See Jasa*, 510 N.W.2d at 288 (recognizing that the discretionary-function exception applies to "determinations or judgments made in establishing plans, specifications, or schedules of operations."). Thus, there was nothing improper about DCCC staff telling Fugett to send an inmate request form and, pursuant to Douglas County's contract with Wellpath, leaving it to Wellpath's staff to provide medical care. In fact, Nebraska regulations mandate that only a "medical authority" can provide medical treatment in a correctional facility. *See* 81 Neb. Admin. Code § 10-002.01.

Fugett cites several Nebraska statutes and cases to show that Douglas County has a legal duty to provide medical care to DCCC inmates. Filing 37 at 10-16. If Douglas County and its agents are under a duty to provide medical care, Fugett reasons, then providing medical care is ministerial. Filing 37 at 12. However, Fugett's argument misses the point. The issue is not whether Douglas County must ensure inmates have access to medical care; the Eighth Amendment so mandates. *See Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) ("The government is obligated 'to provide medical care for those whom it is punishing by incarceration.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))). Instead, the issue is whether, under the PSTCA, Douglas County has discretion in how it provides medical care. In this case, Douglas County used its discretion to contract with Wellpath for the provision of medical care at DCCC. This decision is not one the Court will second-guess. *See Mercer*, 953 N.W.2d at 559 (noting that the purpose of the discretionary-function exception is to prevent judicial "second-guessing").

Likewise, Fugett's reliance on the Nebraska Court of Appeals case *Walters v. Frakes* is unavailing. 953 N.W.2d 831, 844-45 (Neb. Ct. App. 2021), *opinion modified on denial of reh'g*, 957 N.W.2d 203 (Neb. Ct. App. 2021). Fugett asserts that the Court in *Walters* "held that there

16

was an affirmative duty of the State to effectively communicate with medical staff regarding required medical treatment." Filing 37 at 14. It is true that the *Walters* Court indicated that a jailer's duty to provide reasonably adequate protection for inmates could include "a duty to disclose medical complaints to prison medical staff." *Walters*, 953 N.W.2d at 844-45. But Fugett does not allege that Douglas County employees failed to disclose his complaints to Wellpath's medical staff. He only alleges that DCCC staff directed him to write a "Kite" and that he ultimately received inadequate treatment from Wellpath. Filing 1-1 at 9. As explained above, it was within Douglas County's discretion to leave decisions about medical treatment to Wellpath's staff. Moreover, the *Walters* Court expressly stated that, based on the record before it, it was "unable to determine whether the discretionary function exception applies." *Walters*, 953 N.W.2d at 844. Thus, nothing in *Walters* precludes this Court from determining, as a matter of law, that the discretionary-function exception applies in this case.

Judicial intervention in these staff-related decisions would cause improper "judicial 'second-guessing'" of Douglas County's "social, economic, and political policy." *Wizinsky*, 957 N.W.2d at 473. "It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent." *Varig Airlines*, 467 U.S. at 820. The Court concludes that these decisions involve an element of choice from Douglas County, and that this choice was one that the discretionary function exception was designed to shield. *See* Lambert, 945 N.W.2d at 90. Thus, Douglas County thus is entitled to sovereign immunity against these claims.

## IV. CONCLUSION

The Court concludes that Douglas County is entitled to sovereign immunity against the allegations made in Count I of Fugett's Complaint. Therefore, the Court grants Douglas County's motion for summary judgment as to Count I of Fugett's Complaint. Accordingly,

IT IS ORDERED:

1. Plaintiff Cody Fugett's Motion for Leave to File Sur Reply and Additional Exhibit in Opposition to Defendant's Motion for Summary Judgment, Filing 40, is denied in part and granted in part as stated herein; and

2. Defendant Douglas County's Motion for Partial Summary Judgment on Count I of Plaintiff Cody Fugett's Complaint, Filing 31, is granted.

Dated this 29th day of September, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge